# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 7, 2000 Session

## DEBORAH G. HARVEY v. FELIPA B. COVINGTON, d/b/a CHOICE CORPORATE TRAINING INTERNATIONAL

**Direct Appeal from the Circuit Court for Davidson County**
**No. 99C-1865     Carol Soloman, Judge**

---

**No. M2000-01184-COA-R3-CV - Filed February 14, 2001**

---

This appeal arises from a business dispute between the parties. Businesswoman and Investor signed letter of intent to create limited liability company. Business then began operation. Thereafter, several operational disputes arose between the parties, as well as disputes over Businesswoman's use of Business funds. The trial court determined that Businesswoman had defrauded Investor of invested funds and awarded Investor those funds. Investor was also awarded back pay promised by Businesswoman through Business. We find that a partnership agreement existed between the parties and reverse the trial court's judgment. The case is remanded for rescission of the partnership on the basis that it was created under fraudulent circumstances. The trial court's decision to deny attorney's fees requested by Businesswoman is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in part;**
**Affirmed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which BEN H. CANTRELL, J. and HOLLY K. LILLARD, J., joined.

James B. Johnson, Nashville, Tennessee, for the appellant, Felipa B. Covington d/b/a Choice Corporate Training International.

John E. Rodgers, Jr., Nashville, Tennessee, for the appellee, Deborah G. Harvey.

### OPINION

In 1998, Ms. Deborah Harvey and Ms. Felipa Covington tentatively agreed to form and operate a business to be known as Choice Corporate Training International, LLC ("International"). Ms. Harvey was to provide $25,000, while Ms. Covington was to provide all of the assets of her then

existing business, Choice Corporate Training, LLC ("Choice"). These intentions were recorded by the parties in a Letter of Intent.[1]

The parties disputed that an agreement to form a corporation was reached at the time of the signing of the Letter of Intent. Ms. Covington claims that the parties did not agree to form a corporation because they could not agree if the corporation would be a S corporation or a limited liability company. As such, Ms. Covington argues that a partnership was formed between the parties. Ms. Harvey argues that the Letter of Intent contemplated the creation of a limited liability company and that she never intended to form a partnership.

After the signing of this letter, Ms. Harvey transferred $25,000 into a newly formed checking account for International. Discussions were also conducted as to the business responsibilities for each party, the salary of each party, and pre-existing debts of Choice. It was agreed that a portion of International's funds would be used to pay the debts of Choice, though Ms. Harvey claims that such payments were to be reimbursed. Ms. Harvey also applied for a credit card for International. On this application, International was identified as a partnership, though Ms. Harvey did refer to International as an "LLC" and herself as "vice-president." Ms. Covington applied to the Internal Revenue Service for an Employer Identification Number for "Choice Corporate Training International LLC."

Soon thereafter, several disputes arose as to the operation of the business. Ms. Harvey questioned some of the management decisions of Ms. Covington, some of the expenses of Ms. Covington paid by International, and several of the debts of Choice that International funds were used to pay. As a result, Ms. Harvey announced she was quitting the business. At some point during this dispute, International opened a second bank account in which only Ms. Covington had access to withdraw funds. Ms. Covington claims that this action was taken after Ms. Harvey withdrew from the business. Ms. Harvey claims that this action was taken before her withdrawal from the business and was one of the reasons she withdrew. Ms. Harvey filed suit against Ms. Covington claiming that she had "willfully and fraudulently" failed to incorporate the company and fraudulently converted Ms. Harvey's money to her own personal use. Ms. Harvey also alleged that Ms. Covington's fraudulent acts were a violation of the Tennessee Consumer Protection Act.

Upon motion of Ms. Covington, the trial court dismissed the Tennessee Consumer Protection Act claim of Ms. Harvey. The court then found that Ms. Covington had defrauded Ms. Harvey through the transfer of Ms. Harvey's funds to an account controlled by Ms. Covington. The court awarded Ms. Harvey $25,000 for conversion and pre-judgment interest. The court also awarded Ms. Harvey $8,750 plus pre-judgment interest for unpaid wages. The defendant, Ms. Covington, was taxed with all court costs.

---

[1] The letter of intent, in its entirety, stated: "I, Deborah Harvey, agree to invest $25,000.00 for 25% of the company, Choice Corporate Training International, to be organized and incorporated August 30, 1998. Felipa Covington will own the other 75% of the company." The agreement was signed by both parties and dated July 28, 1998.

The issues, as we perceive them, are as follows:

I.      Did the trial court err in failing to find that the relationship between the parties qualified as a partnership?

II.     Did the existence of a partnership require an accounting or settlement of partnership affairs before the filing of any causes of action?

III.    Did the trial court err in finding that Ms. Covington had committed fraud before and during the operation of International?

IV.     How does the finding that a partnership existed between the parties affect the outcome of this case?

V.      Did the trial court err in failing to award the attorney's fees for the successful defense of the Tennessee Consumer Protection act?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* Tenn. R. App. P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn. R. App. P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d).

### Partnership

In Tennessee, a partnership is defined as an association of two or more persons to carry on as co-owners a business for profit, . . . In determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties. If the parties' business brings them within the scope of a joint business undertaking for mutual profit – that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them – the result is a partnership whether or not the parties understood that it would be so.

. . . . The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts. It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship.

***Bass v. Bass***, 814 S.W.2d 38, 41 (Tenn. 1991) (citations omitted).

It is clear the parties took steps to conduct business as "Choice Corporate Training International." On August 13, 1998, a date after the signing of the Letter of Intent, a bank account was established under the name "Choice Corporate Training International." The parties applied for a credit card, requested a federal Employer Identification Number, incurred debts and wrote checks for "Choice Corporate Training International" applying the initials "LLC" after the name. All of these steps were taken before either party made any attempt to establish the form of the business. Ms. Harvey's own testimony suggests that "Choice Corporate Training International" was an entity capable of conducting business and that it operated as such.

Q. Now, y'all basically started operating together August the 13th?

A. Yes, we did.

Q. Of 1998?

A. Uh-huh.

. . . .

Q. Now, if those bills were incurred by International and you wrote checks on behalf of International, weren't you operating as though International was a business?

A. Yes. I was operating as if it were, but that doesn't make it so yet.

Notwithstanding Ms. Harvey's assertion, if an entity is operating as a business it ***must*** exist as some form of entity. Because more than one party was an owner, it is clear that International was not operating as a sole proprietorship. It is also clear that neither party took the steps required under statute to make International a limited partnership,[2] limited liability partnership,[3] or a limited liability company.[4] Neither party intended International to become a corporation, took any steps to register

---

[2] In order to form a limited partnership, a certificate of limited partnership must be filed with the Secretary of State. ***See*** Tenn. Code Ann. § 61-2-201 (Supp. 2000).

[3] In order to become a limited liability partnership, an application requesting limited liability partnership status must be filed with the Secretary of State. ***See*** Tenn. Code Ann. § 61-1-143 (Supp. 2000).

[4] In order to form a limited liability company, articles for a limited liability company must be filed with the Secretary of State. ***See*** Tenn. Code Ann. § 48-203-102 (Supp. 2000).

it as such, nor acted as if International was a corporation.[5] As such, International was none of the business entities listed above. However, International still operated as a business and this fact *requires* this court to determine what specific type of entity International operated as during this period.

The only business entity that this court has not yet rejected is that of a partnership. As we have already cited above, the intentions, understanding or terminology used by the parties is irrelevant to the formation of a partnership. Thus, notwithstanding any of these factors, and based upon the requirement that International must have existed as some form of business entity, we hereby find that the trial court erred in failing to find that International was a business partnership between Ms. Harvey and Ms. Covington.

### Accounting

Partners may not, as a general matter, maintain actions at law against their fellow partners with respect to partnership transactions unless there has been an accounting or settlement of the partnership affairs. There are, however, exceptions to this rule. It does not apply when the lawsuit arises out of the breach of a partner's fiduciary obligations to the partnership, fraud, or the improper use of partnership funds.

*Mandrell v. McBee*, 892 S.W.2d 842, 847 (Tenn. Ct. App. 1994) (citations omitted).

Ms. Covington has argued that Ms. Harvey could not maintain this action due to the fact that she did not request "an accounting . . . or settlement of the partnership affairs." However, this action fits squarely within the exceptions outlined above. Ms. Harvey alleges that Ms. Covington acted "willfully and fraudulently" before and during the operation of International. As such, the rule requiring an accounting of the partnership affairs before the filing of any actions between partners does not apply in this case.

### Fraud

The elements of an action for fraud consist of :

(1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation['s] falsity--that the representation was made knowingly or without belief in its truth, or recklessly without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise.

---

[5]*See* Corporations and Associations, Tenn. Code Ann. § 48-1-210 *et seq.* (1995).

*Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (internal quotations omitted) (*quoting Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

Ms. Covington argues that the trial court incorrectly found that she had committed fraud in her dealings with Ms. Harvey. Ms. Covington contends that she never promised to "organize and incorporate [International] or create it into a limited liability company." In the alternative, she argues that if she did make such a promise, Ms. Harvey did not show that Ms. Covington did not have the intent to carry out the promise at the time at which it was made. We disagree.

It is clear from the record that Ms. Covington did intend for Ms. Harvey to believe that International would be operated as a business for profit. It was because of this representation that Ms. Harvey invested money in International. However, upon a review of the record, we find that there is more than enough evidence to conclude that Ms. Covington, notwithstanding any steps taken to further the business of International, never intended for International to be operated as a business for profit as she promised Ms. Harvey. Instead, she induced Ms. Harvey to invest her funds in the International partnership so Ms. Covington could "convert[] [business] funds to her own use" and "defraud[] Ms. Harvey of the use of these funds." As such, the trial court could properly conclude that Ms. Covington had committed fraud and we hereby affirm its findings.

### Effect of Finding a Partnership Existed

Due to our finding that International existed as a business partnership, it is necessary to examine what effect this ruling will have on the decisions of the trial court. After review, we find that Ms. Harvey's prayer for relief is most analogous to a request for a rescission of the partnership agreement between herself and Ms. Covington. Such a rescission is allowed under section 61-1-138 of the Tennessee Code. This section states:

> Where a partnership contract is rescinded on the ground of the fraud or misrepresentation of one (1) of the partners thereto, the party entitled to rescind is without prejudice to any other right, entitled to:
> (1) A lien on, or right of retention of, the surplus of the partnership property, after satisfying the partnership liabilities to third persons for any sum of money paid by him for the purchase of an interest in the partnership and for any capital or advances contributed by him;
> (2) Stand, after all liabilities to third persons have been satisfied, in the place of the creditors of the partnership for any payment made by him in respect of the partnership liabilities; and
> (3) Be indemnified by the persons guilty of the fraud or making the representation against all debts and liabilities of the partnership.

Tenn. Code Ann. § 61-1-138 (1989). We find that the trial court should have found that a partnership agreement existed between the parties and treated Ms. Harvey's suit as a request for a

rescission of this partnership. We hereby reverse the trial court and remand this case for a rescission of the partnership agreement as allowed under section 61-1-138 of the Tennessee Code.

## Tennessee Consumer Protection Act

Section 47-18-109(e)(2) of the Tennessee Code states:

> In any private action commenced under this section [of the Tennessee Consumer Protection Act], upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court *may* require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorney's fees and costs.

Tenn. Code Ann. § 47-18-109(e)(2) (1995) (emphasis added).

Upon our examination of the record, we can find no suggestion by the trial court that it considered Ms. Harvey's action under the Tennessee Consumer Protection Act to be "frivolous, without legal or factual merit, or brought for the purpose of harassment." *See id.* § 47-18-109(e)(2). This court, in its own independent examination of the evidence before us, can find no such evidence that this action was "frivolous, without legal or factual merit, or brought for the purpose of harassment." *See id.* § 47-18-109(e)(2). In addition, we note that the trial court is not required under the statute to award attorney's fees even upon such a specific finding by the court. As such, we affirm the trial court's refusal to award attorney's fees to Ms. Covington.

## Conclusion

Based on the foregoing conclusions, we hereby remand this case to the trial court for a rescission of the partnership agreement as allowed under section 61-1-138 of the Tennessee Code. The trial court's denial of attorney's fees is affirmed. Costs on appeal are assessed against Felipa B. Covington and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE